UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

WILLIAM ORVILLE CRAGG,            Case No. 15-21741-dob
    Debtor.                                   Chapter 13 Proceeding
                                             Hon. Daniel S. Opperman
_____/
MICHIGAN INDUSTRIAL CONSTRUCTION
CORPORATION, INC.,
    Plaintiff,

v.                                                        Adversary Proceeding
                                             Case No. 15-2117-dob
WILLIAM ORVILLE CRAGG,
    Defendant.
_____/

OPINION GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Introduction and Procedural History

Defendant, William Cragg, moves to dismiss Plaintiff Michigan Industrial Construction Corporation's ("Michigan Industrial") Complaint, which seeks to have this Court determine that debts owed by Mr. Cragg to Michigan Industrial are excepted from discharge by virtue of 11 U.S.C. § 523(a)(2), (4), and (6). For the reasons stated in this Opinion, the Court grants Mr. Cragg's Motion to Dismiss as to the Section 523(a)(6) claim, but denies his Motion to Dismiss as to the remaining claims.

Mr. Cragg filed a Chapter 13 petition with this Court on August 28, 2015. Michigan Industrial filed this adversary proceeding on October 23, 2015, asserting causes of action under Section 523(a)(2), (a)(4), and (a)(6). Mr. Cragg filed a Motion to Dismiss in response on November 23, 2015, which ultimately resulted in the following Order being entered by the Court on January 6, 2016:

# ORDER DISMISSING ADVERSARY PROCEEDING
## WITHOUT PREJUDICE AND WITHOUT COSTS AND ATTORNEY FEES

The Plaintiff, Michigan Industrial Construction, filed this adversary proceeding on October 23, 2015, and Defendant William Orville Cragg filed his Motion to Dismiss on November 23, 2015. That Motion being before the Court and the Court being fully advised in the premises, the Court GRANTS Defendant's Motion to Dismiss, and this adversary proceeding shall be dismissed without prejudice and without costs and attorney fees to any party;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. That this adversary proceeding be, and hereby is, dismissed without prejudice and without costs and attorney fees to any party;

2. That Plaintiff shall have 14 days from the date of this Order to file an amended complaint in this adversary proceeding;

3. That if Plaintiff files an amended complaint in this adversary proceeding within 14 days of this Order, this proceeding will move forward subject to the Federal Rules of Bankruptcy Procedure; and

4. That if Plaintiff does not file an amended complaint in this adversary proceeding by January 20, 2016, the Court will enter an amended order dismissing this adversary proceeding with prejudice.

Michigan Industrial filed an Amended Complaint on January 19, 2106, containing the following relevant allegations:

### GENERAL FACTUAL ALLEGATIONS

7. That Defendant and a nonparty, Defendant's spouse at the time Christa Cragg, entered into a contract with Plaintiff for the improvement of real property on Sanilac Road, in Tuscola County, and in the course of the project, Defendant further changed the plans and specifications thereby requiring additional work.

8. At the time of Plaintiff's initial work, Defendant reported that the fee owner was T.D.C.L., LLC as described in the attached **Exhibit 1**.

9. The parties entered into a contract attached as **Exhibit 2**.

### COUNT I

### Fraudulent Misrepresentation/Inducement

10. Plaintiff adopts and incorporates by this reference, paragraphs 1-9 above as if fully set forth herein.

11. On April 1, 2005 Defendant had overextended his obligations for the project. In order to induce Plaintiff's continued work on an additional phase of the project in the circumstances and without any advance payment, Defendant represented to Plaintiff and Plaintiff legitimately understood and believed that draws were being delayed by Defendant's bank, Signature Bank, but that payment to Plaintiff, via a draw, was about to be issued.

12. Defendant was aware that the representation as to the status of the bank draws were untrue but intentionally represented the same as a "false token" in order to induce Plaintiff's reliance and further work, as reflected by **Exhibit 3**, while awaiting payment on work originally and earlier performed.

13. Although Defendant had financed the earlier phase of work, Defendant had no present intention to either arrange to finance and to pay Plaintiff for the additional work contracted for on or after April 1, 2005.

14. The Plaintiff proceeded at all times to document work in progress and payment with the use of partial unconditional waivers.

15. As part of the fraudulent inducements for additional work, Defendant requested Plaintiff proceed with the submission of partial unconditional waivers on the stated basis that the same were required for draws for the Defendants' bank financing at Signature Bank.

16. In reasonable and justifiable reliance upon Defendant's statements about the status of the bank financing for the project, Plaintiff continued with additional work without advance payment, which would otherwise have been required for Plaintiff to continue and as a result of said reliance Plaintiff performed services on this basis of false pretenses. Plaintiff has been harmed and damaged and entitled to relief under §523(a)(2)(A).

### COUNT II
### Fraudulent Misrepresentation Regarding Waivers

17. Plaintiff adopts and incorporates by this reference, paragraphs 1-16 above as if fully set forth herein.

18. In May 2005, Plaintiff's owner, Beth Ann Fall, went to Defendants' Bank [Signature Bank] to address the status of remaining draws to be issued.

3

Plaintiff was thereupon informed by the Bank, (Defendant's representative and agent for purposes of payment of laborers and lien claimants,) that after the records were reviewed, that partial unconditional waivers prepared by Plaintiff and given to the Defendant to provide to the bank, had been intentionally and materially altered by the Defendant, such that a material misrepresentation as to the status of the project and status of Plaintiff's claim of lien occurred by the Defendant, to the detriment of the Plaintiff.

19. Plaintiff was previously also informed at all times, that Plaintiff's work was part of financing arranged to cover contractors providing improvements on the project and that the financing of Defendants' first mortgage to Signature Bank, earmarked and retained funds for the payment of Plaintiff. As such, Defendant was party to a relationship of trust with Plaintiff and the bank, and a technical trust existed as to certain bank disbursements.

20. Defendant fraudulently and wrongfully altered Plaintiff's partial unconditional waiver(s), in 2005, if not earlier, as to the amount Plaintiff was due. Upon discovery of this, Plaintiff thereupon approached Defendant for an explanation and no explanation was provided, but rather Defendant by his silence acquiesced to the Plaintiff's contention of fraud in the circumstances.

### B. Fraudulent Concealment/Silent Fraud

21. Plaintiff adopts and incorporates by this reference, paragraphs 1-20 above as if fully set forth herein.

22. On or after April 1, 2005 Defendant had overextended his obligations for the project but failed to inform or reveal to Plaintiff the status of other secured obligations with respect to the property and the project so as to leave Plaintiff with a false impression of fact as to Plaintiff's continued work on the project without any payment.

23. Had Plaintiff been aware of the true facts not revealed by Defendant, Plaintiff would have perfected its position with regard to completion of work.

24. When Plaintiff began seeking additional information as a condition for completion of project work, Defendant thereupon, outside the presence of the Plaintiff, made arrangements for Tuscola County law enforcement officers to surprise Plaintiff's workers at the scene and summarily ordered them off the premises without any advance notice having been provided.

25. Plaintiff requested the Defendant to provide an explanation and accounting for the abrupt termination of the services and for payment and Defendant failed and refused and acquiesced to the entry of a judgment in favor of Plaintiff in

4

the 54th Circuit Court for Tuscola County.

26. That Plaintiff did furnish services, goods, and materials to Defendant at the direction of Defendant for improvement of the Property and there remained unpaid the sum of $64,395 plus interest as appears from the Tuscola County Circuit Court Judgment.

27. That Defendant never paid the monies owed to Plaintiff that were being disbursed by Signature Bank for the goods or materials and services furnished by Plaintiff to Defendant under the contract.

28. That Defendant by the nature of his relationship to Plaintiff in this project was at all relevant times, a fiduciary for the benefit of Plaintiff supplying labor and materials and goods under the Michigan Builders Trust Fund Act, MCL 570.151 et seq.

29. That Defendant intentionally defaulted in his fiduciary duties and misappropriated and embezzled funds received from the bank and entrusted into his care for the benefit of Plaintiff.

30. That 11 USC §523(a)(2) excepts from discharge any debt for money, property or services obtained by false pretense, a false misrepresentation, or actual fraud.

31. That the acts of Defendant as set forth herein allowed Defendant to obtain money, property or services from Plaintiff by false pretense, false misrepresentation, or actual fraud.

32. That 11 USC §523(a)(4) excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

33. That the Defendant committed fraud or defalcation of his duties owing to Plaintiff as a fiduciary while Defendant was acting in a fiduciary capacity or in the alternative committed the wrongful taking of funds held for the benefit of Plaintiff with wrongful intent, without consent of Plaintiff, and for the benefit of Defendant and others.

34. That the Defendant willfully and maliciously injured the Plaintiff by taking its valuable building materials on credit, promising to pay without the present intention of doing so, and receiving money for the materials and services and using materials delivered by and services provided the Defendant, then refusing to pay after appropriating materials and benefits.

In its Amended Complaint, Michigan Industrial continues to assert a cause of action under

Section 523(a)(6) in Paragraph 34 by alleging that "Defendant willfully and maliciously injured the Plaintiff by taking valuable building materials on credit, promising to pay without the present intention of doing so, and receiving money for the materials and services and using materials delivered by and services provided the Defendant, then refusing to pay after appropriating materials and benefits."

Mr. Cragg filed another Motion to Dismiss as to the Amended Complaint, to which the Plaintiff responded, which is the current Motion before the Court.

## Position of Parties

Mr. Cragg asserts Michigan Industrial has not sufficiently stated a claim pursuant to 11 U.S.C. § 523(a)(2), (4), or (6) as to claims of Mr. Cragg's supposed fraudulent statements as to bank financing for the project, as well as Mr. Cragg's waiver and alleged concealment of certain facts. In response, Michigan Industrial asserts its Amended Complaint does sufficiently allege these causes of action and that this case should continue.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

## Applicable Statutes and Authorities

Standard for Dismissal under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b), applicable in this adversary proceeding through Federal Rule of Bankruptcy Procedure 7012, states:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> (1) lack of subject-matter jurisdiction;

(2) lack of personal jurisdiction;

(3) improper venue;

(4) insufficient process;

(5) insufficient service of process;

(6) failure to state a claim upon which relief can be granted; and

(7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) operates to test the sufficiency of the complaint. The court is required to construe the complaint in the light most favorable to the plaintiff, and accept all well-pleaded factual allegations in the complaint as true. *See Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 405 (6th Cir. 1998). A court will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1974). A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis*, 135 F.3d at 405 (internal citations omitted). A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right

7

to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 563. *See also Assoc. of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). The *Twombly* Court reaffirmed the "notice pleading" standard of Federal Rule of Civil Procedure 8(a)(2) but renounced "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 560-61 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As explained by the Court in *Twombly*,

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]". . . While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]

*Bell Atlantic Corp. v. Twombly*, 550 U.S. at 553-55 (citations omitted). The *Twombly* Court went on to

> hold that stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest [grounds for relief]. Asking for plausible grounds to infer [a right to relief] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [of an entitlement to relief]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

*Id*. at 553-55 (citations omitted). *See also Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197 (2007) (explaining that Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary[.]")).

8

The Supreme Court later examined *Twombly* in the case of *Ashcroft v. Iqbal*, 556 U.S.662 (2009). In *Iqbal*, the Supreme Court held that *Twombly* applies to all civil actions and is not limited to antitrust disputes only as was the case in *Twombly*. *Iqbal*, 556 U.S. 684. The *Iqbal* Court further defined two "working principles underl[ying its] decision in *Twombly*:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]" – "that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 678-79 (citations omitted).

Section 523(a)(2)(A)

Under section 727 of the Bankruptcy Code, a debtor may obtain a general discharge from all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, there are exceptions for certain obligations, including debts for money obtained by fraud or by use of a false statement in writing. 11 U.S.C. § 523(a)(2)(A) & (B). Section 523(a)(2)(A) & (B) provides:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –
>
> (2) for money, property,[1] services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

---

[1] The term "property" as used in section 523(a)(2)(A) "denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process." *Gleason v. Thaw,* 236 U.S. 558, 561 (1915).

(B) use of a statement in writing –

    (I) that is materially false;

    (ii) respecting the debtor's or an insider's financial condition;

    (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

    (iv) that the debtor caused to be made or published with intent to deceive.

Subsections (A) and (B) are mutually exclusive.

To prevail on a claim under 523(a)(2)(A), a plaintiff must show that:

(1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280 (6th Cir. 1998).

The purpose of section 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1451 (6th Cir. 1994). Plaintiff must show each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Even so, the court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to debtor. *Rembert,* 141 F.3d at 281.

The United States Supreme Court held in the case of *Husky Int'l Elec., Inc. v. Ritz*, No. 15-145, ----S. Ct. ----, 2016 WL 2842452, at *3 (U.S. May 16, 2016), that "actual fraud" under Section 523(a)(2)(A) does not require a false representation. In *Husky*, the debtor was the principal of a debtor corporation that had previously transferred assets without consideration to other companies he controlled in order to avoid payment to creditors of the initial debtor corporation. *Id*. at *2. The *Husky* Court held that forms of fraud other than false representations, such as the fraudulent

conveyance scheme present in that case, can constitute "actual fraud" under Section 523(a)(2)(A). *Id*. at *3.

Intent, under *Rembert*, is measured subjectively. *Id.* A debtor intends to deceive a creditor "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor." *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). A debtor's fraudulent intent

> may be inferred from the totality of the circumstances. The bankruptcy court must consider whether the totality of the circumstances' presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.' The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations.

*Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Col. 2002)(quoting *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (B.A.P. 10th Cir. 2000)(citations omitted)). "A creditor can present proof of surrounding circumstances from which a [c]ourt can infer a dishonest intent." *Comm. Bank & Trust Co. v. McCoy (In re McCoy),* 269 B.R. 193, 199 (Bankr. W.D. Tenn. 2001).

As explained by the court in *Haney v. Copeland (In re Copeland)*, 291 B.R. 740 (Bankr. E.D. Tenn. 2003):

> Proving the Debtor's intent to defraud is similar to proving the Debtor's knowledge and/or recklessness as to the falsity of the representations made. Because intent is a purely subjective question, the court must examine the totality of the Debtor's actions to determine if she possessed the requisite intent to deceive the Plaintiffs. Any benefit of the doubt must be resolved in favor of the Debtor, as § 523(a)(2) is strictly construed in her favor. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.*), 16 F.3d 1443, 1452 (6th Cir. 1994).

*Id.* at 760.

Section 523(a)(4)

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a

fiduciary capacity, embezzlement, or larceny . . . ." The Sixth Circuit has held that § 523(a)(4) requires:

> (1) a fiduciary relationship
>     (a) in the form of an express trust or
>     (b) technical trust relationship;
> (2) breach of that fiduciary relationship; and
> (3) a resulting loss.

*R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178-79 (6th Cir. 1997); *see also Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963 (6th Cir. 2009); *In re Johnson*, 691 F.2d 249, 251-52 (6th Cir. 1982) (finding that fiduciary capacity "applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity" and "the requisite trust relationship must exist prior to the act creating the debt and without reference to it") (citations omitted).

To establish the existence of an express trust, the plaintiff "must demonstrate: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Patel*, 565 F.3d at 968 (internal quotation marks and citation omitted).

As for defalcation, the Sixth Circuit Court of Appeals has held that defalcation for purposes of § 523(a)(4) "occurs through the misappropriation or failure to properly account for those trust funds" by a fiduciary. *Garver*, 116 F.3d at 180 (citation omitted). It requires a "pre-existing fiduciary relationship." *Patel*, 565 F.3d at 968.

In *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013), the Supreme Court decided the level of intent required for defalcation under § 523(a)(4):

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. . . . Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the

12

fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.

*Id.* at 1759-60 (internal quotation marks and citation omitted).

In *Patel*, the Sixth Circuit Court of Appeals discussed intent in the context of the Michigan Builders Trust Fund Act ("MBTFA"). As the *Patel* Court noted and as "carefully explained" in a previous holding in the case of *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 257 (6th Cir. 1982),

> defalcation occurs when evidence supports "the objective fact that monies paid into the building contract fund were used for purposes other than to pay laborers, subcontractors or materialmen first is sufficient to constitute a defalcation under section [524](a)(4) so long as the use was not the result of mere negligence or a mistake of fact." Thus, there is no such thing as "defalcation per se" and instead the debtor must have been objectively reckless in failing to properly account for or allocate funds.

*Id.* at 970 (quoting *Johnson*, 691 F.2d at 257). "[T]his Circuit has never countenanced 'innocent' or merely 'negligent' defalcation" as being sufficient to find a debt non-dischargeable under § 523(a)(4). *Id.* The *Patel* court went on to find that the debtor recklessly misallocated funds, citing his testimony that he paid his own expenses, including his wages, before paying the plaintiff; the debtor's "woefully inadequate" attempts at accounting; and the debtor's concession "that his business operations were sloppy at best . . . ." *Id.* at 971.

Proving the elements of a case under the Michigan Builder's Trust Fund Act, alone, is not sufficient under *Bullock* to entitle a creditor to relief under Section 523(a)(4); rather, the requisite finding of the state of mind of "moral turpitude or intentional wrong" is required. *See Shears v. Vestal (In re Vestal)*, No. 12-0534, Bankr. W.D. Mich. 2013) (holding that the burden of proof shifts to the creditor challenging dischargeability to demonstrate that the debtor intentionally or recklessly

13

acted when violating the MBTFA (n/k/a Michigan Building Contract Fund Act, "MBCFA").

## Analysis

As a preliminary matter, any claim under Section 523(a)(6) must be dismissed because Section 1328(a)(2) precludes any such claim in a Chapter 13 proceeding. While it is not clear that Michigan Industrial makes any Section 523(a)(6) claim in its Amended Complaint, certain statements by counsel at the oral argument suggest Michigan Industrial intends to pursue a Section 523(a)(6) claim. If so, Mr. Cragg's Motion to Dismiss is granted and all Section 523(a)(6) claims are dismissed.

As to the Section 523(a)(2) and (4) claims of Michigan Industrial, the Court finds that the *Twombly* and *Iqbal* standards have been met, but just barely so. For example, while the Court would prefer that allegations of fraud as to the alterations be pled with more specificity and detail, Michigan Industrial pleads enough to put Mr. Cragg on notice of the basis of his claims. Likewise, the allegations regarding Mr. Cragg's status as an owner and not a subcontractor or contractor may not support a MBTFA action, but it is too early in this proceeding to make that determination. Also, as articulated by the *Husky* Court, claims such as alleged in this case may be maintained even without a false representation.

## Conclusion

For the reasons stated in this Opinion, the Court grants Mr. Cragg's Motion to Dismiss any Section 523(a)(6) count, but denies the remaining relief requested by Mr. Cragg. Counsel for Mr. Cragg is directed to prepare an order consistent with this Opinion and the presentment of order procedures of this Court.

Not for publication

**Signed on June 01, 2016**

                                             **/s/ Daniel S. Opperman**
                                         **Daniel S. Opperman**
                                         **United States Bankruptcy Judge**